IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT "nbsg_levi" THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 3:23-SW 112<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Joshua A. Valot, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for information associated with an Instagram account presently using username "nbsg_levi" (hereafter the "Target Account") that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. (hereafter "Meta"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachments A and B. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the Target Account, as described in Attachment B.

2.      Since February 2005, I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the ATF Richmond III Field Office in Richmond, Virginia. I am a graduate of the Federal Law

1

Enforcement Training Center (FLETC) and the ATF National Academy. I have received training with regard to federal firearms and narcotics violations at the ATF National Academy. I have participated in numerous Federal and State investigations, to include but not limited to, illegal possession and trafficking of firearms along with narcotics, homicides, shootings, gangs and robbery investigations. These investigations have led to numerous arrests and convictions for violations of federal and state firearms, narcotics and related laws.

   3. As a part of firearms investigations, I have interviewed informants and cooperating witnesses, including federally prohibited persons who have possessed firearms; conducted physical surveillance; conducted consensual monitoring and recording of telephonic and non-telephonic communications; and obtained and executed search warrants that have led to seizures of narcotics, firearms, and other contraband. Based on my training, knowledge, and experience, I know that firearms and narcotics traffickers utilize mobile devices to maintain contact with their customers, suppliers and associates; maintain contact lists and communication applications ("apps"); plan and maintain information related to travel; access and store financial information and conduct banking activities; maintain calendars and reminders; and take and store pictures of themselves, their associates, money, firearms and other indicia of illegal activities. Based upon these investigations, I also know that individuals often use internet commerce to purchase firearms and firearms related devices, to include machinegun conversion devices (commonly referred to as a "Glock Switch" or "Switch").

   4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials and/or witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C § 922(g)(1) (possession of a firearm by a convicted felon) and Title 18 U.S.C § 922(o) (illegal possession of a machinegun) have been committed by Perry Ike MASON (B/M, DOB: 06/XX/1995) and that a search of the Target Account, described in Attachment A, may contain evidence of these crimes, as described in Attachment B.

6.      I know that Instagram is a social media network that is engineered predominantly to be accessed and utilized through cellular phone Instagram application.  I know that Instagram interfaces with smart phones by allowing users to post photos/videos directly through the Instagram application on a smart phone to Instagram.  I know Instagram application on a smart phone allows a user to network, communicate, share photos, directly communicate through direct messaging with other users and/or comment on other content on Instagram.

7.      I request a search warrant to search the Target Account to identify and/or confirm the suspected user of the Target Account, identify Instagram photographs and/or videos depicting illegal firearms and "switch" possession, identify the time and locations where the Instagram pictures and/or videos were taken, identify messages discussing illegal firearm possession of a firearm in possession of a convicted felon and the illegal possession of a machinegun, identify evidence to further link these Instagram accounts to MASON, and to investigate the unlawful possession of firearms/firearm devices on the Target Account, as described in Attachment B.

## JURISDICTION

8.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

3

(c)(1)(A). Specifically, the Court of the Eastern District of Virginia is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## PERTINENT STATUTES

9.    **Possession of a Firearm by a Convicted Felon**: 18 U.S.C § 922(g) (1) provides that it is a crime to possess a firearm as a convicted felon.

10.    **Possession of a Machinegun**: 18 U.S.C. § 922(o) provides that it is a crime to possess an unregistered machinegun.

## PROBABLE CAUSE

11.    The United States, including ATF Richmond III, is conducting a criminal investigation of Perry Ike MASON regarding possible violations of Title 18 U.S.C § 922(g)(1) (possession of a firearm by a convicted felon) and Title 18 U.S.C § 922(o) (possession of a machinegun).

12.    MASON has the following felony convictions:

a.    November 13, 2020: guilty; possession with intent to manufacture/sell controlled substances – Schedule I/II (Richmond City, VA); and

b.    November 13, 2020: guilty; display of a firearm while selling Schedule I/II drugs (Richmond City, VA).

13.    On or about April 7, 2023, Richmond Police Department (RPD) detectives with the Strategic Violence Interdiction Unit (SVIU) received information that a known and wanted felon, MASON, was in possession of a semi-automatic handgun which appeared to be altered with a machinegun conversion device (commonly referred to as a "Glock switch" or "switch"). I know, from training and experience, and from conversations with other law enforcement officials, that a machinegun conversion device alters a semi-automatic firearm to be capable of firing fully automatic; meaning multiple rounds are expelled by a single trigger pull. I have seen and examined

machinegun conversion devices and devices with machinegun conversion devices in my experience as an ATF special agent.

14.     This information came in the form of an Instagram Live video[1] posted by MASON under Instagram username "fucklovditsnotreal," which SVIU detectives know to be associated with MASON. In particular, the SVIU detective who initially viewed the video has personal knowledge of MASON, as that detective has arrested MASON before. That detective has also viewed the Target Account on numerous occasions and believes it to be used by MASON. SVIU detectives also knew MASON to be a convicted felon and knew that, on that date, he had an active felony warrant out of Chesterfield County, VA.

15.     During the Live, which began streaming at approximately 1:26 PM on April 7, 2023, MASON could be seen entering a vehicle and then removing a Glock-style firearm from his jacket. The firearm featured what appeared to be a machinegun conversion device, a weapon-mounted laser with a yellow sticker, and an extended magazine. At one point, MASON wore a black balaclava. Detectives identified MASON's location in the video as the Speed Mart on 2700 Broad Rock Boulevard in Richmond, VA, based on the visible signage. Detectives began to investigate and continued to view MASON's Live videos.

---

[1] Instagram Live allows a user to stream a video in real-time. Other users may join the livestream.

5



*Screenshot of MASON on Instagram Live on April 7, 2023
displaying a firearm with a switch.*

16.    At approximately 5:51 PM on April 7, 2023, on Live, MASON brandished what appeared to be the same firearm from earlier in the Live. At one point, MASON picked up the firearm and held it to his head. When MASON did this, the machinegun conversion device on the rear plate was visible.



*Screenshot of MASON on Instagram Live on April 7, 2023*
*displaying a firearm with a switch.*

17.    At approximately 6:25 PM on April 7, 2023, detectives responded to the Speed

Mart at 2700 Broad Rock Boulevard and reviewed security footage from approximately 1:24 PM

that same day.  The security footage showed MASON in the Speed Mart and then entering a

light-colored Nissan at approximately 1:26 PM. This is the approximate time that MASON

entered the vehicle in the Live video. In the security video, MASON can also be seen putting on

the black balaclava that he was wearing at approximately the same time in the Live.



*Surveillance video from the Speed Mart of MASON
in the store and entering a vehicle.*

18.    At approximately 7:42 PM on April 7, 2023, the Live showed MASON at what appeared to be a restaurant. The Live showed placemats, plates, and a napkin holder marked "Twisted Crab," along with MASON. Shortly thereafter, detectives responded to the Chesterfield Towne Center in Richmond, VA, which is where the Twisted Crab restaurant is located. Detectives saw an individual matching MASON's description enter a Nissan sedan (VA tag TVH8718) in the parking lot of the Chesterfield Towne Center.

19.    Detectives followed the Nissan to the 2000 block of Kimrod Road in Richmond, VA, in the Eastern District of Virginia, where it parked at/in front of a single-residence brick home with a shed in the back yard. MASON exited the Nissan and entered a shed in the backyard of the house. Detectives approached the shed and two unknown individuals exited. While the shed door was open, detectives saw MASON standing inside with two other individuals. MASON was

8

wearing the same clothing as in the Live videos from that day and officers recognized him as the same individual in the Live videos from that day. MASON was detained and arrested on an outstanding state warrant. A blue iPhone was recovered from MASON's person at the time of his arrest.

20.     Detectives searched the shed and discovered a black Glock 22 .40 caliber handgun, bearing serial number VSH619, on top of a support wall. The Glock had a weapon-mounted laser on the lower rail with a yellow sticker, an extended magazine, a cartridge in the chamber, and a machinegun conversion device on the rear plate of the firearm. The Glock matched the depiction of the firearm displayed by MASON that day on Live. Officers seized the Glock.

21.     I am an interstate nexus expert, and I visually and physically examined the Glock recovered and determined it to have been manufactured outside of the Commonwealth of Virginia, meaning it had traveled in interstate commerce prior to its recovery on April 7, 2023.

22.     On or about May 2, 2023, ATF Firearms Technology Criminal Branch received the Glock with the affixed machinegun conversion device for determination of whether the switch constituted a machinegun and whether the switch made the Glock capable of firing fully automatic. The report was received back on or about May 25, 2023 and examiners found that the Glock is a "firearm" as defined in 18 U.S.C § 921(a)(3)(A); that the switch, in and of itself, is a "machinegun" as defined in 18 U.S.C § 921(a)(24); and that the Glock with the switch installed fired automatically with a single function of the trigger and is therefore a machinegun.

23.     Sometime shortly after the investigation and arrest of MASON on April 7, 2023, the Target Account changed its username from "fucklovditsnotreal" to "nbsg_levi". The account appears to be the same otherwise and still bears the same numerical account identifier. I know, from training and experience and from conversations with other members of law enforcement,

that it is not uncommon for individuals engaged in illegal activities to change the username of their Instagram or other social media accounts to avoid detection. I also know that changing the account username, or "handle," does not change the content of the account.

24.     On April 11, 2023, ATF personnel served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f) for the Target Account, which requires Instagram/Meta to preserve all information associated with the Target Account.

25.     In addition to the Live video footage viewed on April 7, 2023, a review of the Target Account shows additional posts of MASON with firearms. As recently as June 16, 2023, I viewed the Target Account and observed a video that appeared to be posted on May 20, 2023, showing MASON singing into the camera. In the video a firearm and a green laser sight can be seen.



*A post on the Target Account from February 2023 showing MASON with a firearm (left) and a screenshot from a video on the Target Account in June 2023 showing MASON with a firearm with a green laser sight (right).*

26.     On June 23, 2023, I personally viewed MASON's Virginia DMV photo and identified MASON as the same individual featured in the Live video from April 7, 2023, along with other photos and videos posted to the Target Account. Based on this, and based on the fact that the detective who initially viewed the Live video on April 7, 2023 had personal knowledge of MASON, and because MASON was wearing the same clothing in the Live video as when he was arrested that same day, and appeared to be the same individual, I believe MASON is the user of the Target Account.

## BACKGROUND CONCERNING INSTAGRAM

27.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the Target Account listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

28.     Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

29.     Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

11

30.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

31.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

32.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

33.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and

periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

34.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

35.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

36.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

37.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

38.    Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

39.    Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

40.    Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

41.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

42.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

43.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

44.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

45.    For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

46.    Proof of possession of firearms, ammunition, and/or machinegun conversion devices, especially by a convicted felon, is not limited to viewing photographs and/or videos on Instagram. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the

15

files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

47.    I know that the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. In this case, MASON displayed firearms in multiple Instagram Lives and posts. Based on my training and experience, conversations with other law enforcement officers, and information obtained during the investigation, individuals involved in illegally possessing firearms will share firearms with each other, discuss their possession of firearms, gather for social occasions where the firearms are present, and display the firearms in photographs and Instagram posts. Therefore, stored communications and files connected to an Instagram account may provide direct evidence of the offense under investigation.

48.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events

relating to the crime under investigation. In this case, such information will assist in linking ownership and user information for the Target Account to MASON.

49.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement). Here, such information may indicate where MASON obtained a machinegun conversion device and/or other firearms, his intent to do so, and his future intentions with the firearms, ammunition, and machinegun conversion device.

50.     Other information connected to the use of Instagram may lead to the discovery of additional evidence.  For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation. MASON was a convicted felon when he posted images/Live videos on the Target Account with firearms and/or machinegun conversion devices. Such information would assist in identifying how, and from who, MASON obtained firearms, ammunition, and a machinegun conversion device.

51.     I know, from training and experience, that Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user

or users. In this case, such information would assist in identifying who is presently using the

Target Account, and who utilized the account at the time of the crimes alleged.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

52.     I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require

Instagram to disclose to the government copies of the records and other information (including

the content of communications) particularly described in Section I of Attachment B.  Upon

receipt of the information described in Section I of Attachment B, government-authorized

persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

53.     Based on the aforementioned factual information, I respectfully submit that there

is probable cause to believe that violations, or attempted violations, of 18 U.S.C. § 922(g)(1)

(possession of a firearm by a convicted felon), and 18 U.S.C. § 922(o) (possession of a

machinegun) have been committed by MASON, using the Target Account, described more fully

in Attachment A, and that that evidence, fruits, and instrumentalities, as described more fully in

Attachment B, will be found in the Target Account. Therefore, I request that the Court issue the

proposed search warrant.

54.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.  The government will execute this warrant

by serving it on Instagram.  Because the warrant will be served on Instagram, who will then

18

compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Joshua Valot
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my presence.

_____
/s/
HON. SUMMER L. SPEIGHT
United States Magistrate Judge
Eastern District of Virginia
Date: June 23, 2023

19

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile currently using username "nbsg_levi," and previously using username "fucklovditsnotreal," that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California, 94025.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on or about April 11, 2023, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

        1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

        2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

        3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

        4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

        5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

        6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2023, to the present;

        7.    Privacy and account settings, including change history; and

8.    Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from January 1, 2023, to the present;

C.    All content, records, and other information relating to communications sent from or received by the account from January 1, 2023, to the present, including but not limited to:

1.    The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the account and other Instagram users from January 1, 2023, to the present, including but not limited to:

1.    Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.    All contacts and related sync information; and

4.    All associated logs and metadata;

E.    All records of searches performed by the account from January 1, 2023, to the present; and

F.     All location information, including location history, login activity, information geotags, and related metadata from January 1, 2023, to the present.

*Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.*

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon), and 18 U.S.C. § 922(o) (possession of a machinegun), that have been committed by Perry Ike MASON (B/M, DOB: 06/XX/1995), using the Target Account, from January 1, 2023 to the present, including, for each username identified on Attachment A, information pertaining to the following matters:

(a) Communications/photographs involving possession/use/exchange/sale of firearms, firearm parts/components, machinegun conversion devices, and ammunition, to include any/all communications that utilize street slang in the reference of firearms/ammunition/machinegun conversion devices;

(b) Communications/photographs that detail the exchange of illegal firearms/ammunition/machinegun conversion devices in exchange for money and/or illegal narcotics;

(c) Communications/photographs regarding machineguns, unlawful modification of firearms and/or exchange of illegal firearm parts/components in reference to converting firearms into machineguns;

(d) Communications/photographs regarding purchasing/exchange of firearms/ ammunition/machinegun conversion devices in connection with firearm trafficking;

23

(e) Communications/photographs regarding the possession/use/exchange/sale of firearms/ammunition/machinegun conversion devices in connection to/in furtherance of violent crimes, and the facts/circumstances surrounding such possession/use/exchange/sale and prospective/historical violent crimes;

(f) Evidence indicating how and when the Instagram account was created, accessed, and/or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner; and

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.    such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

25

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                               Signature